54 P.3d 656 (2002)
147 Wash.2d 424
STATE of Washington, Petitioner,
v.
Michael D. CRAWFORD, Respondent.
No. 71683-8.
Supreme Court of Washington, En Banc.
Argued March 5, 2002.
Decided September 26, 2002.
*657 Edward Holm, Thurston County Prosecutor, Steven Sherman, Deputy, Olympia, for Petitioner.
Thomas Doyle, Hansville, Patricia Pethick, Tacoma, for Respondent.
*658 BRIDGE, J.
This case presents two issues: (1) whether a defendant waives an objection under the confrontation clause to the admission of his wife's hearsay statements by exercising his marital privilege to prevent his spouse from testifying; and (2) whether the wife's statements are otherwise admissible as an exception to the hearsay rule or as an interlocking confession. We hold that a defendant does not waive his confrontation rights when he invokes the marital privilege. We also conclude that the statements here are admissible because the wife's statements interlock with those of her husband and hence provide adequate indicia of reliability to satisfy confrontation clause concerns.

FACTS
On August 5, 1999, Michael Crawford stabbed Richard Rubin Kenneth Lee at Lee's apartment. State v. Crawford, noted at 107 Wash.App. 1025, 2001 WL 850119, at *1 (2001). Police arrested Crawford that evening and they collected two taped statements from both Crawford and his wife, Sylvia, who had been present at the time of the assault. Id. The first statements contained roughly the same account of the attack: the three had collected at Lee's house; Crawford left to buy alcohol; when he returned, Lee was making sexual advances toward Sylvia; Crawford stabbed Lee twice. Id.
Several hours after police taped the first statements, they again questioned the Crawfords independently regarding the events of August 5. Id. Their stories were again similar to each other, but distinctly different from the earlier version of the encounter. Id. This time the Crawfords each revealed that the alleged sexual assault had actually occurred several weeks earlier. Id. On the night in question, both Crawfords contended, Michael became angry when Lee was mentioned and he and his wife left to find Lee. Id. Sylvia directed her husband to Lee's apartment and after talking with him for a short period, Crawford stabbed Lee twice. Id. Although unclear, the main distinguishing factor in these second statements was that Crawford alluded that Lee may have had something in his hand when Crawford stabbed Lee, while Sylvia implied that Lee may have grabbed for something after Crawford stabbed Lee. Id.
Crawford was charged with attempted first degree murder while armed with a deadly weapon and first degree assault while armed with a deadly weapon. Clerk's Papers (CP) at 2. At trial, Crawford claimed that he acted in self-defense and he invoked the marital privilege to prevent his wife from testifying against him. Report of Proceedings (RP) at 7-8. The trial court admitted both of Sylvia's statements on the grounds that the statements would not violate the marital privilege and because the court determined that the statements were sufficiently reliable to alleviate confrontation clause concerns. RP at 45, 53; RP at 219-21, Exs. 37, 38; RP at 231, Exs. 41-42. A jury subsequently convicted Crawford of first degree assault while armed with a deadly weapon. CP at 2. In an unpublished opinion, a divided Court of Appeals concluded that Crawford did not waive his right to confrontation when he invoked the marital privilege. Crawford, 2001 WL 850119, at *1. It then held that admitting Sylvia's second statement was reversible error because her statement did not possess adequate indicia of reliability, nor did it interlock with Michael's second statement. Id. at *5-7. Accordingly, the Court of Appeals reversed Crawford's conviction. Id. at *1. We granted review.

WAIVER OF RIGHT TO CONFRONTATION
Crawford invoked the marital privilege, RCW 5.60.060, to keep his wife from testifying against him at trial. RP at 7. The marital privilege in Washington states in relevant part:
A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage.
RCW 5.60.060(1). Neither Crawford nor the State called Sylvia to testify. See RP at *659 7-14. Crawford claims, however, that his confrontation right under the Sixth Amendment, as applied to the states through the due process clause of the Fourteenth Amendment, was violated when Sylvia's hearsay statements to the police were admitted at trial.
The State contends that Crawford waived his right to confrontation when he neglected to call Sylvia at trial, relying on State v. Salazar, 59 Wash.App. 202, 796 P.2d 773 (1990) and In re Personal Restraint of Sauve, 103 Wash.2d 322, 692 P.2d 818 (1985), to support its position. While instructive, both Salazar and Sauve contain a key distinction from the case before us, making them distinguishable. In those cases the witness was "available"; Sylvia Crawford was not an available witness.
In Salazar, the defense counsel did not call an informant suggesting that defense was unable to locate him. 59 Wash.App. at 216, 796 P.2d 773. Rejecting the assertion that the witness was unavailable, the court stated, "We have held that a defendant who fails to call an available hearsay declarant waives an objection under the confrontation clause to admission of the hearsay." Salazar, 59 Wash.App. at 217, 796 P.2d 773 (citing State v. Borland, 57 Wash.App. 7, 12, 786 P.2d 810 (1990)). "Similarly, defense counsel's failure to call [the informant], who we assume was available absent persuasive evidence to the contrary, waived any confrontation clause objection." Id.
In Sauve, the defendant claimed that his confrontation right was violated when the police officer who received an informant's tip, failed to testify at the suppression hearing. 103 Wash.2d at 329, 692 P.2d 818. Although the court did not directly hold that Sauve had waived his confrontation right, it did note that the defendant's failure to exercise his rights at trial did not constitute a denial of such rights by the court. Sauve, 103 Wash.2d at 330, 692 P.2d 818 (citing State v. Murphy, 35 Wash.App. 658, 669 P.2d 891 (1983); State v. Whittington, 27 Wash.App. 422, 618 P.2d 121 (1980)). Accordingly, the court stated,
There is no evidence that petitioner asked the State for the testimony of the officer who received the tip, nor did petitioner himself attempt to call the officer to the stand. The State was not given a chance at trial to either present the officer's testimony or prove his unavailability. The failure of petitioner to exercise his rights at trial does not constitute a denial of such rights.
Id.
In both Salazar and Sauve the witnesses were available, but the defense failed to call them at trial. In the case presented, in contrast, the witness, Sylvia Crawford, was unavailable to testify because Michael Crawford had invoked his marital privilege. The marital privilege explicitly states that "[a] husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband." RCW 5.60.060(1). This language specifically denies Sylvia the ability to testify either for or against her husband, rendering her unavailable as a witness. Although Michael, not Sylvia, invoked the privilege, the result is the sameSylvia was unavailable to testify, unlike the witnesses in Salazar and Sauve. Therefore, the situation before us is distinct from Salazar and Sauve and it does not logically follow that Crawford waived his confrontation rights by not calling his wife to testify.
The conclusion that Crawford did not waive his confrontation rights is supported by a decision from this court that directly addressed the issue of marital privilege and extrajudicial statements by a third party. See State v. Burden, 120 Wash.2d 371, 374, 841 P.2d 758 (1992). In Burden, this court stated, "Here, the defendant asserts admission of Mary Burden's extrajudicial statements by third persons would indirectly violate the testimonial privilege and place [the defendant] in the position of having to waive the privilege to refute the testimony or allow the testimony without cross examination. We have previously rejected this argument." Id. (citing State v. Kosanke, 23 Wash.2d 211, 160 P.2d 541 (1945)). By recognizing the rejection of this argument, this court implied that the testimonial privilege is not violated by admissible hearsay statements and, furthermore, that the defendant does not have *660 to waive the marital privilege to refute the testimony. Therefore, the defendant cannot be said to have waived his right to cross examination.[1]
Further, courts are hesitant to accept waiver of a defendant's Sixth Amendment rights because of their significance in the trial process. See generally John R. Kroger, The Confrontation Waiver Rule, 76 B.U. L.REV. 835 (1996). "`There are few subjects, perhaps, upon which [the Supreme Court] and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" Id. at 840 (quoting Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). Where a waiver has been recognized, the waiver usually occurs when the defendant has inappropriately caused the witness's unavailability. Id. at 844. Thus, "`a defendant may waive the right to confront witnesses against him when his own misconduct is responsible for a witness's unavailability at trial.'" Id. at 842 (quoting United States v. Potamitis, 739 F.2d 784, 788 (2d Cir.1984)). Misconduct is not apparent when a defendant invokes a statutory privilege, however. See United States v. Barlow, 693 F.2d 954, 962 (6th Cir.1982) (suggesting that only sham marriage would result in waiver, but admitting legitimate spouse's grand jury testimony when it met adequate guarantees of trustworthiness). In the case before us Crawford invoked a recognized statutory privilege.[2]
As the Court of Appeals acknowledged here, forcing the defendant to choose between the marital privilege and confronting his spouse presents an untenable Hobson's choice. Crawford, 2001 WL 850119, at *1. The Court of Appeals aptly noted that this court traditionally has "not required a defendant to waive one right to preserve another." Id. (citing State v. Michielli, 132 Wash.2d 229, 246, 937 P.2d 587 (1997) (upholding dismissal of case where defendant was forced to choose between waiving right to speedy trial or right to effective assistance of counsel); State v. Price, 94 Wash.2d 810, 814, 620 P.2d 994 (1980) (stating that forcing defendant to choose between effective assistance of counsel and speedy trial impermissibly prejudices defendant)). Both Michielli and Price present situations where a defendant was forced to balance his trial rights and ultimately select one right to the exclusion of the other. To force a defendant to choose the more difficult position of confronting his spouse on the stand, or to assume that he has waived his confrontation right by electing not to call his wife, presents a similarly untenable choice and undermines the marital privilege itself. Therefore, we hold that Crawford did not waive his right to confrontation when he invoked the marital privilege.

*661 ADMISSIBILITY OF HEARSAY
If Crawford did not waive his right to confrontation, the State contends in the alternative that Sylvia's out-of-court statements to the police were admissible hearsay that did not violate the Sixth Amendment.
This court has noted a distinction between in-court testimony and extrajudicial statements by a spouse. In drawing a distinction between the two, we have concluded that hearsay statements may be admissible under certain circumstances. Burden, 120 Wash.2d at 377, 841 P.2d 758. Forcing a spouse to testify, however, challenges the policy purposes behind the privilege. In Burden, this court determined that the policy purposes fostering domestic harmony and preventing discord, reflecting the natural repugnance of having one spouse testify against the other, and preventing the testifying spouse from having to choose between perjury, contempt of court, or jeopardizing the marriagesupported this distinction. Id. at 375, 841 P.2d 758 (citing State v. Thorne, 43 Wash.2d 47, 55, 260 P.2d 331 (1953); State v. Wood, 52 Wash.App. 159, 163, 758 P.2d 530 (1988); Teresa Virginia Bigelow, Comment, The Marital Privileges in Washington Law. Spouse Testimony and Marital Communications, 54 WASH. L.REV. 65, 70 (1978-79)). We concluded that the latter two purposes would not be affected by allowing third person testimony, because the spouse would not be testifying in court, and questioned the applicability of the first purpose. Burden, 120 Wash.2d at 375-76, 841 P.2d 758. Thus, as we have acknowledged, confronting a spouse on the stand is quite distinct from admitting an extrajudicial statement.
To assess whether an extrajudicial hearsay statement is admissible we apply a multilayered analysis, in consideration of the valuable constitutional protections afforded by the Sixth Amendment. Simply because a statement falls within a hearsay exception does not mean that it will satisfy the Sixth Amendment. State v. Rice, 120 Wash.2d 549, 565, 844 P.2d 416 (1993). Therefore, the court will employ specific safeguards "`to ensure that the proffered evidence offers some reliability in terms of the declarant's perception, memory and credibilitya function traditionally performed by cross examination.'" Id. at 566, 844 P.2d 416 (quoting State v. Anderson, 107 Wash.2d 745, 750-51, 733 P.2d 517 (1987)).
First, the statements must be admissible under the rules of evidence. Rice, 120 Wash.2d at 564, 844 P.2d 416. Second, the statements must contain a sufficient indicia of reliability and trustworthiness to satisfy the requirements of the confrontation clause. Id. A firmly rooted exception to the hearsay rule will satisfy this requirement. State v. Davis, 141 Wash.2d 798, 845, 10 P.3d 977 (2000). If the exception is not firmly rooted, then the court will consider nine nonexclusive factors to determine the relative reliability of the hearsay statements.[3]Rice, 120 Wash.2d at 565-66, 844 P.2d 416; State v. Whelchel, 115 Wash.2d 708, 722-25, 801 P.2d 948 (1990). Alternatively, the indicia of reliability test can be met if the statements "interlock" in accordance with our decision in Rice. 120 Wash.2d at 569-70, 844 P.2d 416.
Sylvia's first statement to the police is not hearsay because it was not offered to prove the truth of the matter asserted.[4] ER 801(c). Instead, as the Court of Appeals noted, it was offered to demonstrate that the Crawfords lied about the circumstances preceding the assault. Crawford, 2001 WL *662 850119, at *5. Considering that out-of-court statements raise hearsay and confrontation clause objections only when they are offered to prove the truth of the matter asserted, Sylvia's first statement is not inherently objectionable. State v. Parris, 98 Wash.2d 140, 145, 654 P.2d 77 (1982). It will be admissible, however, only if it is relevant under ER 401, and it is relevant only if her second statement is admitted.
Sylvia's second statement is hearsay: The declarant is unavailable at trial because Crawford invoked the marital privilegeand the statement is being offered to prove the truth of the matter asserted. ER 801(c). The State contends that Sylvia's second statement is admissible under ER 804(b)(3), the hearsay exception for a declarant's statement against penal interest. A statement against penal interest is not considered a firmly rooted exception to the hearsay rule, however. Whelchel, 115 Wash.2d at 715, 801 P.2d 948. Therefore, "out-of-court statements from a nontestifying codefendant made against penal interests and which inculpate the defendant are admissible against the defendant only when they bear adequate indicia of reliability." State v. St. Pierre, 111 Wash.2d 105, 113, 759 P.2d 383 (1988) (citing Anderson, 107 Wash.2d at 750, 733 P.2d 517; State v. Dictado, 102 Wash.2d 277, 287-88, 687 P.2d 172 (1984)). Thus, we must determine whether the statement contains a sufficient indicia of reliability to satisfy the confrontation clause. See Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
Before we determine whether the statement is sufficiently reliable to satisfy confrontation clause concerns, we must assess which portions of the statement were actually against Sylvia's penal interest. Only the portions of Sylvia's statement that are self-inculpatory will be admitted under the statement against interest exception to the hearsay rule. See State v. Roberts, 142 Wash.2d 471, 491-97, 14 P.3d 713 (2000); ER 804(b)(3). In Roberts this court adopted the Supreme Court's rejection of a "whole statement" approach to defendant declarations. 142 Wash.2d at 494, 14 P.3d 713 (adopting Williamson v. United States, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)). Therefore, even though self-exculpatory statements may be included within a statement that is generally inculpatory, only those portions that are actually self-inculpatory are admissible. Id. at 492-94, 14 P.3d 713.
A statement against interest, or self-inculpatory statement, is defined as:
A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true.
ER 804(b)(3) (emphasis added).
Crawford objected to the admission of Sylvia's statements that he was "`infuriated,'" "`past tipsy,'" and that he said Lee "`deserves a ass whoopin.'" Crawford, 2001 WL 850119, at *7 n. 3 (Armstrong, C.J., dissenting). He also objected to the admission of Sylvia's statement regarding whether Lee reached for or possessed a weapon when Michael assaulted him because it allegedly rebutted his own testimony and damaged his self-defense claim.
While potentially damaging to Michael, these statements are all inculpatory of Sylvia as well. It was Sylvia who showed Michael where to find Lee and she was present through the duration of the violent encounter. She walked away from the stabbing with Michael and did not turn to the police when she had the opportunity. As a potential accomplice,[5] therefore, Sylvia would benefit from limiting Michael's involvement; the lesser his charge, the lesser her accomplice liability. Sylvia's statements that Michael was "infuriated," "past tipsy," and that he *663 said Lee "deserves a ass whoopin" would not shift blame from her to Michael, but rather it could increase Michael's culpability, and potentially hers as well. Furthermore, if Sylvia knew that Michael wanted to give Lee an "ass whoopin" and took Michael to find Lee, this fact could support a charge against Sylvia for accomplice liability because she could be viewed as encouraging or aiding the facilitation of a crime. See RCW 9A.08.020(3)(a). Likewise, Sylvia's assertion that Lee may have reached into his pocket, possibly for a weapon, but had empty hands when Michael stabbed him, would be against her interest. Rather, she would benefit her own case if she had said that Lee wielded a weapon throughout the confrontation and that Michael was merely protecting himself. Therefore, we conclude that these statements were self-inculpatory and admissible hearsay, provided they meet a sufficient indicia of reliability.
Because a codefendant's confession is presumed unreliable,[6] the statement must either meet a firmly rooted exception to the hearsay rule[7] or provide some indicia of reliability, such as interlocking with the defendant's own confession. St. Pierre, 111 Wash.2d at 112-13, 759 P.2d 383. The State asserts that Sylvia's second statement is admissible as an interlocking confession with Michael's second statement. See generally Rice, 120 Wash.2d 549, 844 P.2d 416 (adopting Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). As this court recognized in Rice, "[w]hen a codefendant's confession is virtually identical [i.e., interlocks] to that of a defendant, it may be deemed reliable." Id. at 570, 844 P.2d 416 (citing Lee, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514). Hence an interlocking confession will serve the same purpose as the nine-factor test in assessing reliability. Id.
The Court of Appeals here held that, although the Crawfords' statements were "very similar," they differed regarding whether Lee was armed when Michael stabbed him. Crawford, 2001 WL 850119, at *6. Following are the two statements for comparison.
Sylvia's statement:
Q: did Kenny do anything to fight back from this assault
A: (pausing) I know he reached into his pocket ... or somethin' ... I don't know what
Q: after he was stabbed
A: he saw Michael coming up. He lifted his hand ... his chest open, he might of went to go strike his hand out or something and then (inaudible)
Q: okay, you, you gotta speak up
A: okay, he lifted his hand over his head maybe to strike Michael's hand down or something and then he put his hands in his ... put his right hand in his right pocket ... took a step back... Michael proceeded to stab him ... then his hands were like ... how do you explain this ... open arms ... with his hands open and he fell down... and we ran (describing subject holding hands open, palms toward assailant)
Q: okay, when he's standing there with his open hands you're talking about Kenny, correct
A: yeah, after, after the fact, yes
Q: did you see anything in his hands at that point
A: (pausing) um um (no)
Ex. 42, at 6-7.
Michael's statement:
Q: okay. Did you ever see anything in [Lee's] hands
A: I think so, but I'm not positive
Q: okay, when you think so, what do you mean by that
A: I coulda swore I seen him goin' for somethin' before, right before everything *664 happened. He was like reachin', fiddlin' around down here and stuff... and I just ... I don't know, I think, this is just a possibility, but I think, I think that he pulled somethin' out and I grabbed for it and that's how I got cut ... but I'm not positive. I, I my mind goes blank when things like this happen. I mean, I just, I remember things wrong, I remember things that just doesn't, don't make sense to me later.
Ex. 44, at 7.
Although the Court of Appeals concluded that the statements were contradictory, upon closer inspection they appear to overlap. The Court of Appeals stated that Sylvia's version of the story had Lee grabbing for something only after he had been stabbed, while Michael stated that Lee may have had something in his hand before the attack. Crawford, 2001 WL 850119, at *6. However, when asked whether Lee fought back from the assault, Sylvia states that Lee "lifted his hand over his head maybe to strike Michael's hand down or something and then he put his hands in his ... put his right hand in his right pocket ... took a step back ... Michael proceeded to stab him...." Ex. 42, at 7. She also previously stated that she was unsure how Michael received the cut on his hand. Id. at 6. Thus, it is unclear from Sylvia's statement when, if ever, Lee possessed a weapon.
Michael's statement is equally ambiguous. He states, "I coulda swore I seen him goin' for somethin' before, right before everything happened. He was like reachin', fiddlin' around down here and stuff ... and I just... I don't know, I think, this is just a possibility, but I think, I think that he pulled somethin' out and I grabbed for it and that's how I got cut ... but I'm not positive." Ex. 44, at 7. Thus, both of the Crawfords' statements indicate that Lee was possibly grabbing for a weapon, but they are equally unsure when this event may have taken place. They are also equally unsure how Michael received the cut on his hand, leading the court to question when, if ever, Lee possessed a weapon. In this respect they overlap.
Self-defense is at issue in this case, so admittedly the timing of Lee's possession of a weapon is significant. However, both of the Crawfords' statements are ambiguous as to whether Lee ever actually possessed a weapon. The interlocking confession rule is designed to admit "virtually identical" statements. Rice, 120 Wash.2d at 570, 844 P.2d 416. As the dissent from the Court of Appeals noted, and we agree, "neither Michael nor Sylvia clearly stated that Lee had a weapon in hand from which Michael was simply defending himself. And it is this omission by both that interlocks the statements and makes Sylvia's statement reliable." Crawford, 2001 WL 850119, at *7 (Armstrong, C.J., dissenting). Because Sylvia's and Michael's statements are virtually identical, admission of Sylvia's statement satisfies the requirement of reliability under the confrontation clause.

CONCLUSION
We hold that a defendant does not waive his Sixth Amendment right to confront an adverse witness when he invokes the marital privilege to keep his wife from testifying at trial. Thus, Michael Crawford did not waive his confrontation clause rights when he invoked RCW 5.60.060 and refused to call his wife, Sylvia, to testify at his trial. Sylvia's pretrial statements to the police, at issue in this case, were admissible, however, because they were self-inculpatory and they interlocked with Michaels' own admissible statements.
We reverse the Court of Appeals and reinstate the conviction.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] Citing Kosanke, the Burden court further supported its position that the admission of the testimony neither indirectly violated the marital privilege nor forced the defendant to waive the privilege to refute the testimony.

"[T]he court [has not gone] so far as to hold that relevant and material evidence could not be adduced merely because, in order to refute the same, the wife of a defendant might have to be called as a witness. In this case the wife of appellant was not called as a witness by respondent, nor was the attention of the jury called to her in such a way as to require objection on the part of appellant in order to preserve his rights under the statute.... [T]he fact that refutation of competent evidence would require the wife being a witness does not make it erroneous to adduce the testimony. The statute [testimonial privilege] was not violated either directly or indirectly."
Burden, 120 Wash.2d at 374, 841 P.2d 758 (quoting Kosanke, 23 Wash.2d at 217-18, 160 P.2d 541). According to this passage it is clear that the marital privilege still stands, as well as the right to confront the witness; neither has been waived.
[2] Although no formula has emerged for application of the confrontation waiver rule, case law suggests six major legal issues that courts will resolve before applying the doctrine: "(1) witness unavailability, (2) cause of unavailability, (3) intent, (4) standard of proof, (5) statement reliability, and (6) waiver hearing procedure." Kroger, supra, at 846. The key element for this case is the cause of the unavailability. "Two paradigmatic ways in which a defendant satisfies the causation requirement have evolved: murder and threats." Id. at 849. From this statement it is apparent that the evolution of the waiver doctrine has not been directed at the legitimate invocation of statutory privileges, absent threat or other indication of malfeasance.
[3] The nine factors include: (1) whether the declarant, at the time of making the statement, had an apparent motive to lie; (2) whether the declarant's general character suggests trustworthiness; (3) whether more than one person heard the statement; (4) the spontaneity of the statement; (5) whether trustworthiness is suggested from the timing of the statement and the relationship between the declarant and the witness; (6) whether the statement contains express assertions of past fact; (7) whether the declarant's lack of knowledge could be established by cross-examination; (8) the remoteness of the possibility that the declarant's recollection is faulty; and (9) whether the surrounding circumstances suggest that the declarant misrepresented the defendant's involvement.
[4] The defense counsel did not object to the admission of the statements as hearsay when they were presented at trial. See RP at 219-32. Defense argument appears to hinge on the previous invocation of the marital privilege and right to confrontation. See RP at 7-21, 37.
[5] An accomplice is someone who with knowledge that it will promote or facilitate the commission of a crime either (1) solicits, commands, encourages, or requests such other person to commit the crime or (2) aids or agrees to aid the other person in planning or committing the crime. RCW 9A.08.020(3)(a).
[6] Although Sylvia is not a codefendant, as she has not been formally charged with a crime, her role is similar to that of a codefendant. She was present during the assault, was arrested and gave a statement to the police concerning the events, and had an arguable motive to shift the blame away from herself. Her role in this case thus suggests applying the Rice interlocking confession analysis by analogy.
[7] As previously noted, a statement against penal interest is not a firmly rooted hearsay exception for purposes of the confrontation clause.