**Joseph L. ANDERSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8064.**

Court of Appeals of Alaska.

April 15, 2005.

Colleen A. Libbey and Daniel E. Libbey, Anchorage, for Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### *OPINION*

COATS, Chief Judge.

In the early morning of December 1, 2000, the Anchorage police received a 911 call from a woman; the woman reported that she had been physically assaulted. When a police officer arrived on the scene, the woman told the officer that someone else was hurt. The woman led the officer to a nearby apartment, where a man was lying on the floor. When the officer asked this man what had hap-

pened, the man answered that "Joe"—the defendant, Joseph L. Anderson—had hit him with a pipe.

At Anderson's trial, the injured man did not testify, but his out-of-court statement was presented to the jury through the hearsay testimony of the police officer. The trial judge ruled that the man's statement was admissible as an excited utterance under Alaska Evidence Rule 803(2). In our first decision in Anderson's case, we upheld that evidentiary ruling.[1]

Now, however, we must decide a question of federal constitutional law: Even though the injured man's statement was admissible as an excited utterance under Alaska Evidence Rule 803(2), was the police officer's hearsay testimony concerning this out-of-court statement barred by the Confrontation Clause of the United States Constitution?

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court construed the Confrontation Clause to prohibit the government from introducing hearsay testimony describing "testimonial" out-of-court statements (unless the government proves (a) that the person who made the out-of-court statements is unavailable as a witness and (b) that the defendant had a prior opportunity to cross-examine this person concerning those statements). The issue in Anderson's case is whether the injured man's response to the officer's question, "What happened?", qualifies as "testimonial" hearsay under *Crawford.*

For the reasons explained here, we conclude that the injured man's response was not "testimonial" for purposes of the Confrontation Clause. Because hearsay testimony concerning this out-of-court statement was not barred by the Confrontation Clause, and because (as we concluded in our previous decision) the statement was admissible as an excited utterance under Alaska's evidence rules, Anderson's trial judge properly allowed the police officer to testify concerning the injured man's out-of-court statement.

*Facts and proceedings*

In the early morning of December 1, 2000, Zonyua Robinson placed a 911 call to the Anchorage Police Department. Robinson informed the police that Joseph Anderson had just assaulted her.

Anchorage Police Officer Pam Nelson was dispatched to the Arctic Tern Inn to contact Robinson. When Officer Nelson contacted Robinson, she was bleeding and was very upset. Robinson told Officer Nelson that there was someone else who was hurt and needed help. She led the officer to a nearby apartment, where an injured man—Carroll Nelson—was lying on the floor, covered with a blanket or bedspread.

According to Officer Nelson's later testimony, Robinson asked Carroll Nelson if he was all right. Carroll Nelson replied that he was hurt, and that he was having a hard time breathing. When Officer Nelson removed the covering from Carroll Nelson's body, she observed that Nelson was not wearing a shirt, and that he had several obvious bruises on his torso. According to Officer Nelson, Carroll Nelson appeared to be in a lot of pain.

At this point, Officer Nelson asked him, "What happened?" Carroll Nelson responded that "Joe" had hit him with a pipe.

Carroll Nelson did not testify at Anderson's trial. However, Officer Nelson was allowed to testify concerning this out-of-court statement. The trial judge ruled that Carroll Nelson's response to the officer's question was admissible as an excited utterance under Alaska Evidence Rule 803(2).

Later, when Anderson appealed his conviction to this Court, we affirmed this evidentiary ruling. In reaching this conclusion, we relied on the United States Supreme Court's decision in *Ohio v. Roberts.*[2] In *Roberts*, the Supreme Court ruled that the hearsay exception for excited utterances was a "firmly rooted hearsay exception," and thus any out-of-court statement that qualified as an excited utterance inherently car-

---

1. *See Anderson v. State*, Alaska App. Memorandum Opinion and Judgment at 5–8 No. 4823 (January 28, 2004).

2. 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

ried sufficient indicia of trustworthiness to satisfy the Confrontation Clause of the United States Constitution.[3]

■ Following our decision, Anderson petitioned the Alaska Supreme Court to hear his case. While Anderson's petition was pending, the United States Supreme Court decided *Crawford v. Washington*. In *Crawford*, the Supreme Court overruled *Ohio v. Roberts* and announced a new interpretation of the Confrontation Clause. *Crawford* holds that the Confrontation Clause flatly prohibits the government from introducing "testimonial" hearsay, no matter how much the circumstances surrounding the making of the out-of-court statement might indicate that the statement is trustworthy, unless the defendant has had a prior opportunity to cross-examine the speaker regarding the out-of-court statement, and unless the government demonstrates that the speaker is unavailable to testify at the defendant's trial.

Because *Crawford* announced a new Confrontation Clause analysis, the Alaska Supreme Court remanded Anderson's case to us so that we might reconsider our decision in light of *Crawford*.

### Crawford v. Washington

Michael D. Crawford was tried in the State of Washington for assault and attempted murder. Crawford had stabbed Kenneth Lee and claimed self defense. Crawford's wife, Sylvia, had seen the stabbing and had been extensively interrogated by the police soon afterwards. Sylvia did not testify at Crawford's trial because Crawford exercised Washington's marital privilege, which bars a spouse from testifying without the other spouse's consent. But the State was able to introduce, over Crawford's objections, Sylvia's tape-recorded statements to the police, which the State offered as evidence that Crawford had not stabbed Lee in self defense. The State argued that Sylvia's statement was admissible, although

hearsay, because it was a statement against penal interest.[4] The trial court and the Washington Supreme Court concluded that admission of Sylvia's statement did not violate Crawford's federal constitutional right to confrontation. The courts relied on *Ohio v. Roberts*. The Washington Supreme Court concluded that, although Sylvia's statement did not fall under a firmly-rooted hearsay exception, the statement had sufficient guarantees of trustworthiness to satisfy the Confrontation Clause.[5] The United States Supreme Court granted *certiorari*.

In the *Crawford* decision, the Supreme Court reexamined its decision in *Ohio v. Roberts*. Under *Ohio v. Roberts*, a witness's out-of-court statement could be admitted if it had "adequate indicia of reliability." A statement had adequate indicia of reliability if it fell within a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness."[6] But in *Crawford*, the Court concluded that the *Ohio v. Roberts* test was fundamentally flawed. First, the Court pointed out the unpredictability of factors which courts used to determine whether a hearsay statement had sufficient indicia of reliability to satisfy the Confrontation Clause.[7] The Court pointed out that factors which courts used to determine that a statement was reliable were often contradictory.

But the Court found that the "unpardonable vice of the *Roberts* test [was] not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude."[8] The Court concluded that testimonial hearsay evidence could not be admitted unless the witness who made the out-of-court statement was unavailable and had been previously cross-examined. The Court did not define what testimonial hearsay was. But the Court defined a witness as someone who "bear[s] testimony" and defined "testimony" as "[A] solemn declaration or affirmation made for the purpose of establishing or

3. 448 U.S. at 66, 100 S.Ct. at 2539.

4. Wash. Rule Evid. 804(b)(3); A.R.E. 804(b)(3).

5. *Crawford*, 541 U.S. at 40, 124 S.Ct. at 1358.

6. *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

7. *Crawford*, 541 U.S. at 62, 124 S.Ct. at 1371.

8. *Id.* at 1371.

proving some fact." [9] The Court then set out some examples of statements which were testimonial:

> Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.[10]

*Crawford's* description of "testimonial" statements clearly includes statements made to the police during a formal interrogation. But the Supreme Court did not define what constituted interrogation. The Court stated that "Sylvia's recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition [of testimonial]." [11] But the Court stated that "[w]e use the term 'interrogation' in its colloquial, rather than any technical legal, sense." [12] The Court also stated that testimonial statements were "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." [13]

The Court further explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the [s]tates flexibility in their development of hearsay law ... as would an approach that exempts such statements from Confrontation Clause scrutiny altogether." [14] The essential question in Confrontation Clause analysis has thus become whether or not a particular out-of-court statement was "testimonial."

### Applying Crawford to Anderson's case

■ Turning to Anderson's case, the question is whether Carroll Nelson's statement to Officer Nelson that "Joe" had hit him with a pipe was testimonial. In *Crawford,* the Supreme Court stated that "interrogations by law enforcement officers fall squarely within [the class of statements that are testimonial hearsay.]" [15] The Supreme Court did not define "interrogation" but stated that "[w]e use the term in its colloquial, rather than any technical legal sense." [16]

In determining the colloquial definition of interrogation, it seems logical for us to turn to the dictionary. The American Heritage Dictionary of the English Language defines interrogate as "to examine by questioning formally or officially." [17] The Merriam–Webster Dictionary of Law provides the definition of "to question formally and systematically." [18] From these definitions, we conclude that Officer Nelson did not interrogate Carroll Nelson when she asked him, "What happened?" The questioning does not seem to fall within the category of formal, official, and systematic questioning.

In addition, the *Crawford* Court pointed out that the Confrontation Clause applies to "witnesses against the accused." [19] The Court defined a witness as someone who "bear[s] testimony" and defined "testimony" as "[a] solemn declaration or affirmation made for the purposes of establishing or

---

9. *Id.* at 1364 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). ·

10. *Id.* at 1374 (footnote omitted).

11. *Id.* at 1365 n. 4.

12. *Id.* (footnote omitted).

13. *Id.* at 1364.

14. *Id.* at 1374.

15. *Id.* at 1365.

16. *Id.* at 1365 n. 4 (footnote omitted).

17. *American Heritage Dictionary of the English Language* (4th ed.2000) (visited March 23, 2005) <http://www.bar tleby.com/61/72 /I0197200.-html>.

18. *Merriam–Webster Dictionary of Law* (1996) (visited March 23, 2005) <http://dicti onary.lp.findl aw.com/scripts/ results.pl?co= dictionary.lp. findlaw.com & topic= 94/94289c09ca6 73bf97beadcaff 2836254>.

19. *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364.

proving some fact." [20] The Court's definition of "witness" also seems to imply a certain structure or formality. The *Crawford* case also stated that testimonial statements were "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." [21] Although the Supreme Court's wording could be given a number of different interpretations, when we consider this wording in light of the definitions of "interrogate" and "witness," the Supreme Court appears to be speaking of more formal statements than the single excited response at issue in Anderson's case.

. We have previously upheld Judge Hensley's determination that Carroll Nelson's statement was admissible as an excited utterance.[22] An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." [23]

> To be admissible as an excited utterance, an out-of-court statement must have been made while the declarant was under "a condition of excitement which temporarily still[ed] the capacity [for] reflection and produce[d] utterances free of conscious fabrication." The declarant's spontaneity, a product of the emotions being experienced by the declarant, is the key factor in determining the admissibility of the statement.[24]

The finding that Carroll Nelson's statement was an excited utterance, particularly under the facts of this case, appears to be inconsistent with the conclusion that Carroll Nelson was a "witness," as the Supreme Court defined the word in *Crawford,* or that his statements were made "under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." [25]

All we have shown by this analysis is that Carroll Nelson's statement does not appear to fall within the category of statements that the United States Supreme Court defined as clearly testimonial in *Crawford.* While the Court explained what core statements would be regarded as testimonial, it did not explain the full reach of its decision. The Court declined to say that all statements which were made in response to police questioning would be testimonial or that any hearsay statement which directly implicated a defendant would violate the Confrontation Clause. We conclude that the out-of-court statement at issue in this case can be deemed nontestimonial even though it was made to a police officer, and even though it directly implicated Anderson.

We have reviewed the numerous decisions which have interpreted *Crawford.* The great majority of courts which have considered this question have concluded that an excited utterance by a crime victim to a police officer, made in response to minimal questioning, is not testimonial.[26] We are persuaded by

**20.** *Id.* at 1354 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)).

**21.** *Id.* at 1364.

**22.** Alaska R. Evid. 803(2).

**23.** *Id.*

**24.** *Dezarn v. State,* 832 P.2d 589, 591 (Alaska App.1992) (quoting Commentary to Alaska Evidence Rule 803(1)-(2), third paragraph) (citations omitted).

**25.** *Crawford,* 124 S.Ct. at 1364.

**26.** *See People v. Cage,* 15 Cal.Rptr.3d 846, 848 (Cal.App.2004) (holding that hearsay statement made at the hospital to police that defendant had cut him was not testimonial because the interview was "unstructured" and "informal and unrecorded") *petition for review granted* 19 Cal.

Rptr.3d 824, 99 P.3d 2 (Cal.2004); *Leavitt v. Arave,* 371 F.3d 663, 683 n. 22 (9th Cir.2004) (murder victim calls police night before death to report that defendant had broken into her home—court concluded that this was excited utterance and non-testimonial because victim initiated contact, was not interrogated, and her motive in calling was only to obtain "help in a frightening intrusion into her home"); *Stancil v. United States,* 866 A.2d 799, 815 (D.C.App.2005) (holding that excited utterances made to police officers are testimonial *only* when given in response to "questioning in a structured environment"); *United States v. Webb,* 2004 WL 2726100, at *4 (D.C.Super.2004) (Officer dispatched to scene of assault asks victim "What happened?" Victim states that defendant punched her in the face. Victim's statement held non-testimonial); *Fowler v. State,* 809 N.E.2d 960, 961–66 (Ind.App.2004) (held that statements to police in response to informal police question-

these cases that the statement which Carroll Nelson gave to Officer Nelson was not testimonial and that admission of the statement does not violate the Confrontation Clause.

We have found three cases arguably arriving at a contrary conclusion. Two of these cases are readily distinguishable from Anderson's case. *In re E.H.*,[27] is a case where the alleged victims, ages five and two at the time of the offense, reported to their grandmother that their thirteen-year-old babysitter had sexually assaulted them over a year before. The trial court allowed these statements under an Illinois rule which permitted the statements of a child under thirteen years old to be admitted in a prosecution for physical or sexual assault if the child was unavailable and there was "corroborative evidence of the act which is the subject of the statement."[28] The appellate court held that the children's statements were testimonial under *Crawford*. The case is helpful to

Anderson's position because in determining that the statements are testimonial, the appellate court stated that the hearsay statements "bore accusatory testimony against [the defendant] which offered to prove the truth of the matter asserted specifically, that E.H. sexually assaulted her."[29] But that case is distinguishable. The victims' statements were not excited utterances and the statements were not made to the authorities.

In *Washington v. Powers*,[30] the Court held that a tape-recorded 911 call reporting a violation of a domestic violence restraining order was a testimonial statement. The Court concluded that the purpose of the 911 call was to report a violation of the restraining order to allow the police to apprehend the defendant and was not made "under the stress of immediate threat of harm nor was [the defendant] still present." The alleged victim's statements were made in response to

ing at the scene of a crime shortly after crime occurred are not testimonial); *State v. Barnes*, 854 A.2d 208, 211–12 (Me.2004) (Defendant charged with murder of his mother. In an earlier incident, the mother went to police station in tears stating that defendant had tried to kill her. Statements admitted as excited utterance. Mother's statements non-testimonial because she had gone to the police on her own while under the stress of the alleged assault and police only asked questions to determine why she was upset); *People v. Bryant*, 2004 WL 1882661, at *1 (Mich. App.2004) (murder victim's statement that "Rick shot me" was not testimonial because police had only asked "What happened?"); *State v. Forrest*, 164 N.C.App. 272, 596 S.E.2d 22, 29 (2004) (Kidnaping victim's statements to police shortly after being rescued were admissible as excited utterances and not testimonial. The police asked no questions and victim gave account of crime); *People v. Mackey*, 5 Misc.3d 709, 785 N.Y.S.2d 870, 874 (N.Y.City Crim.Ct.2004) (assault victim's statements to police non-testimonial where she initiated contact with officers immediately after defendant punched her—her statements were made to seek immediate protection rather than initiate a prosecution, and there was no formal police questioning); *People v. Moscat*, 3 Misc.3d 739, 777 N.Y.S.2d 875, 880 (N.Y.City Crim.Ct.2004) (911 call made by domestic violence victim to obtain emergency help is non-testimonial. Call made to get help, not to initiate prosecution); *People v. Watson*, 2004 WL 2567124, at **14 (N.Y.Sup.2004) (Armed robbery victim makes statements to police immediately following crime. Victim's first spontaneous statement to police that "that man just robbed me" was not testimonial. Second statement in response to police question if there was anyone

else involved, that defendant "was the only one" was not in response to a "structured question asked with an eye towards trial" but was designed to secure the area, and also not testimonial. Victim's further responses to police questioning were testimonial); *United States v. Griggs*, 2004 WL 2676474, at *5 (S.D.N.Y.2004) (Police officer dispatched. to scene hears declarant say, "Gun! Gun! He's got a gun!" and observed declarant gesture towards defendant. Statement held nontestimonial); *State v. Anderson*, 2005 WL 171441 (Tenn.Crim.App.2005) (holding that excited utterances made to police officers responding to reported crime are not "testimonial"); *State v. Maclin*, 2005 WL 313977, at *17 (Tenn.Crim.App.2005) (domestic violence victim's statements made to responding police officer were excited utterances and not testimonial); *Key v. State*, —— S.W.3d ——, 2005 WL 467167, at *5 (Tex.App.2005) (holding that excited utterance made by victim to officer responding to scene of assault was not testimonial); *State v. Orndorff*, 122 Wash.App. 781, 95 P.3d 406, 408 (2004) (where witness told police she saw man with a gun downstairs, saw two men leave, was panic-stricken and tried to dial 911, statement held to be non-testimonial).

27. 355 Ill.App.3d 564, 291 Ill.Dec. 443, 823 N.E.2d 1029 (2005).

28. *Id.* at 567, 291 Ill.Dec. at 445, 823 N.E.2d at 1031.

29. *Id.* at 573, 291 Ill.Dec. at 449, 823 N.E.2d at 1035.

30. 124 Wash.App. 92, 99 P.3d 1262, 1263–66 (2004).

several questions by the 911 operator. The case is distinguishable because the statements were made in response to several questions and by the court's finding that the purpose of the call was to initiate a criminal prosecution.

*Lopez v. State*[31] is the case which comes the nearest to directly supporting Anderson's argument. The police responded to a kidnaping report and contacted Ruiz. The officer asked Ruiz what happened, and Ruiz reported that Lopez had abducted him at gunpoint and pointed at Lopez, who was twenty-five yards away. The Court concluded that it was reasonable for the trial court to find that the kidnaping had occurred shortly before the police arrived and that Ruiz's statement to the police was an excited utterance. But the Court concluded that Ruiz had to know that his statement to the police was "a formal report of the incident that would be used against the defendant."[32] The Court held that Ruiz's statement to the police was testimonial. It is not clear how the Florida Court would approach the facts of the present case. The Florida Court's decision apparently stands alone. We conclude that we should follow the emerging majority view on the admissibility of excited responses to brief on-the-scene questioning by police officers.

We accordingly uphold the admission of Carroll Nelson's out-of-court statement.

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, concurring.

We are asked to decide whether a crime victim's one-sentence response to a police officer's on-the-scene question, "What happened?", should be deemed "testimonial" for purposes of the Confrontation Clause analysis announced by the United States Supreme Court in *Crawford v. Washington.*[1] I agree with my colleagues that this kind of out-of-court statement is not testimonial.

As Justice Scalia himself conceded, his majority opinion in *Crawford* does not offer a precise definition of "testimonial".[2] Instead of giving us a definition, the *Crawford* opinion merely describes by example. One of the Supreme Court's examples of testimonial hearsay is an out-of-court statement procured through police interrogation:

> Whatever else the term ["testimonial"] covers, it applies at a minimum to prior testimony at a preliminary hearing [or] before a grand jury[; and to testimony] at a former trial; and to police interrogations.

*Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

Interpreting the phrase "police interrogation" in its broadest sense, any answer to a question posed by a police officer might be viewed as a statement procured through police interrogation. But I conclude that such a broad interpretation of "interrogation" would be a misreading of *Crawford.*

First, just as *Crawford* refused to adopt a definition of "testimonial", *Crawford* likewise refused to adopt a definition of "interrogation". True, Justice Scalia stated that he was using "interrogation" in its "colloquial" sense. But the colloquial meanings of words are normally ascertainable. In contrast, Justice Scalia appears to have used the adjective "colloquial" because he believed that it embraced a degree of uncertainty or ambiguity. That is, he wished to *avoid* giving a precise definition of "interrogation":

> We use the term "interrogation" in its colloquial [sense] rather than any technical legal ... sense. *Cf. Rhode Island v. Innis,* 446 U.S. 291, 300–01 [100 S.Ct. 1682, 64 L.Ed.2d 297] ... (1980). Just as various definitions of "testimonial" exist, one can imagine various definitions of "interrogation," and we need not select among them in this case. [Crawford's wife's] recorded statement, knowingly given in response to structured police questioning,

**31.** 888 So.2d 693, 697 (Fla.Dist.Ct.App.2004).

**32.** *Id.* at 700.

**1.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**2.** *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374 & n. 10.

qualifies under any conceivable definition [of "interrogation"].

*Crawford*, 541 U.S. at 53, 124 S.Ct. at 1365 n. 4.

Nevertheless, as Judge Coats points out in his majority opinion, even this vaguely contoured definition does provide insight into what the *Crawford* court intended by its use of the term "interrogation". As used in everyday speech, "interrogate" has a more limited meaning than "ask" or "inquire" or even "question". An "interrogation" is a formal, systematic questioning that is conducted to advance an official investigation or inquiry.

Prisoners are interrogated. Suspects are interrogated. And, although we normally speak of witnesses being "examined" at a trial or at an inquest, one might reasonably describe this process as an interrogation. But when you happen on the scene of a traffic accident and you ask a bystander, "What happened?", or when you see a large crowd gathered in front of a store and you ask, "What's going on?", these are not "interrogations".

Given *Crawford's* admonishment that "interrogation" should be understood in its colloquial sense, it appears that what occurred in Anderson's case—a police officer arriving at the scene of a reported crime and asking, "What happened here?"—does not constitute an interrogation.

This conclusion is bolstered by the fact that the Supreme Court's decision in *Crawford* rests on a lengthy exploration of the origins of the Confrontation Clause.

As described in *Crawford*, the Confrontation Clause was a direct response to repeated abuses of the power of inquest—the power to force people to appear and give a statement, under oath or otherwise, to a government official or to a legislative body investigating a potential crime. According to *Crawford*, the abuse was not the inquest itself. (Indeed, the grand jury inquest and the coroner's inquest are still fixtures of American law.) Rather, the abuse was that these inquisitorial proceedings were employed to obtain accusatory statements that were later introduced, as hearsay, at criminal trials. That is, these accusatory statements were used against criminal defendants, even though the makers of these statements were never brought to court so that the defendants might cross-examine them. *Crawford*, 541 U.S. at 42–55, 124 S.Ct. at 1359–1367.

In the course of his explication of the Confrontation Clause, Justice Scalia explained why the *Crawford* majority concluded that police interrogations are analogous to the *ex parte* examinations conducted by royal officials under their inquest power:

> Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive. [Lord] Cobham's examination [before the Privy Council] was unsworn, ... yet [Sir Walter] Raleigh's trial [at which Cobham's accusatory out-of-court statement was introduced] has long been thought a paradigmatic confrontation violation....
>
> That [the] interrogators are police officers rather than magistrates does not change the picture either. Justices of the peace conducting examinations under the Marian statutes were not magistrates as we understand that office today, but had an essentially investigative and prosecutorial function.... England did not have a professional police force until the 19th century, ... so it is not surprising that other government officers performed the investigative functions now associated primarily with the police. The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace.

*Crawford*, 541 U.S. at 52–53, 124 S.Ct. at 1364–65 (emphasis in the original) (citations omitted).

This passage from *Crawford* reinforces my conclusion that, when the Supreme Court used the phrase "police interrogation", the Court was not referring to the kind of brief, on-the-scene questioning that occurred in Anderson's case. Rather, the Supreme Court was referring to the kind of formal, systematic questioning that was characteristic of the English inquisitorial practices that

prompted the enactment of the Confrontation Clause.

This interpretation is consistent with the facts of *Crawford*. Michael Crawford and his wife, Sylvia, paid a visit to Richard Lee at Lee's apartment. During this visit, Michael Crawford stabbed and killed Lee (purportedly because Lee had attempted to sexually assault Sylvia Crawford).[3] Later that night, the police arrested Michael Crawford for the homicide. However, it appears that Sylvia Crawford was also suspected of having a role in this crime. According to the United States Supreme Court's opinion, both Michael and Sylvia were given *Miranda* warnings, and "police detectives interrogated each of them twice".[4] According to the facts recited in the Washington Supreme Court's opinion, all four of these interviews were taped, and the second set of interviews occurred "[s]everal hours after [the] police [conducted] the first [interviews]".[5]

In other words, Sylvia Crawford was subjected to prolonged and systematic police questioning regarding the homicide. And, as was true when the Privy Council interrogated Lord Cobham in its investigation of Walter Raleigh's potential treason, the person being interrogated—Sylvia Crawford—knew that she herself was suspected of complicity in the crime under investigation.

Given these facts, one can see why the *Crawford* majority concluded that the police interrogation of Sylvia Crawford was analogous to the type of *ex parte* interrogations by royal officials that took place under English law in the sixteenth, seventeenth, and eighteenth centuries—and, thus, why the Confrontation Clause barred the government from introducing evidence of Sylvia's answers through the hearsay testimony of a police officer.

In contrast, the evidence at issue in Anderson's case is a single sentence uttered by the victim of a crime in response to a police officer's on-the-scene question, "What happened?" These facts do not fall within the rationale of the *Crawford* decision, and thus the *Crawford* decision does not apply to these facts.

For these reasons, I agree with my colleagues that the Confrontation Clause did not bar the State from introducing hearsay testimony that the victim in this case answered the officer's question by stating, "Joe hit me with a pipe."

---

**3.** *Crawford v. Washington,* 541 U.S. at 36–38, 124 S.Ct. at 1356–57; *State v. Crawford,* 147 Wash.2d 424, 54 P.3d 656, 658 (2002).

**4.** *Crawford v. Washington,* 541 U.S. at 38, 124 S.Ct. at 1357.

**5.** *State v. Crawford,* 54 P.3d at 658.