888 So.2d 693 (2004)
Moroni LOPEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-2761.
District Court of Appeal of Florida, First District.
November 17, 2004.
Rehearing Denied December 22, 2004.
*695 Nancy A. Daniels, Public Defender and Jamie Spivey, Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General and Felicia A. Wilcox, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
The defendant, Moroni Lopez, appeals his conviction for possession of a firearm by a convicted felon. We conclude that the trial court erred in allowing the jury to consider a hearsay statement made by a person who said that he observed the defendant in possession of the firearm. The statement was testimonial and the declarant was not available or subject to prior cross-examination. Consequently, the admission of his statement violated the defendant's Sixth Amendment right to confront the witnesses against him.

I
Police officers were dispatched to an apartment complex in Tallahassee on the morning of September 23, 2002, to investigate a report of a kidnaping and assault. Officer Mel Gaston encountered the alleged victim, Hector Ruiz, standing in the parking lot. Ruiz was nervous and he appeared to be upset. Officer Gaston asked Ruiz what had happened, and he said that a man had abducted him in his own car at gunpoint. Ruiz then pointed through his body to the defendant who was standing about twenty-five yards behind him in the parking lot.
A short time later, Ruiz told Officer Frank Arias that the gun used during the abduction was in his car. The officers searched the car and found a loaded .38 caliber Smith & Wesson revolver under the front passenger seat. Officer Arias advised the defendant of his rights and questioned him about the revolver. According to officer Arias, the defendant admitted that the revolver was his. He explained that he hid the gun in Ruiz's car when he saw the police officers.
Based on these facts, the state charged the defendant with armed kidnaping, assault with a weapon, and possession of a firearm by a convicted felon. The defendant entered a plea of not guilty to these charges and sought discovery from the state. Hector Ruiz appeared for a discovery deposition and he was questioned by defense counsel. By the time of the trial, however, Ruiz was unavailable as a witness. The state was unable to serve him with a subpoena.
Just before the trial, the prosecutor informed the court and defense counsel that the state would be proceeding only on the charge of possession of a firearm by a convicted felon. Defense counsel moved to exclude the statements Hector Ruiz made to Officer Gaston, and the court held a hearing on that issue outside the presence of the jury. The prosecutor argued that the statement was admissible under the excited utterance exception to the hearsay rule.
Defense counsel objected on the ground that the statement did not qualify under the exception. Additionally, defense counsel argued that the admission of the statement would violate the defendant's right under the Sixth Amendment to confront the witnesses against him. The trial court held that the statement was admissible, and the officers were allowed to give an edited version of the events. The jurors *696 were not told about the alleged abduction, but they did hear the statement Ruiz made to Gaston identifying the defendant as the person who had the revolver.
The defendant testified in his own defense and denied that he had possessed the firearm. He also repudiated the admission attributed to him by Officer Arias. The defendant told the jury that he believed he had been set up by Ruiz and his employer, Mario Morqucho. The day before he was accused of this offense, the defendant reported to law enforcement officers that he had been the victim of a sexual battery perpetrated by Morqucho. He said that he was also at odds with Ruiz. As he explained, he could not get Ruiz to leave his apartment. The defendant told the jury that he thought Ruiz and Morqucho set him up in retaliation for the complaints he had made against them.
The jury found the defendant guilty with a special finding that he was in actual possession of the firearm. After the verdict, the trial judge imposed a sentence of three years in the Department of Corrections with a three-year mandatory minimum term. The defendant then filed a timely appeal to this court.

II
Whether the out-of-court statement by Hector Ruiz was properly admitted in evidence against the defendant is a question involving federal constitutional law as well as the state law of evidence. The statement must qualify as an exception to the hearsay rule to be admissible under the Florida Evidence Code. However, it would not resolve the present controversy merely to conclude that the statement meets one of the exceptions to the hearsay rule. Because this is a criminal case, we must also determine whether the admission of the statement violates the defendant's Sixth Amendment right to confront the witnesses against him.

A
Section 90.802 of the Florida Evidence Code states the general rule that hearsay is inadmissible except as provided by statute. Hearsay is defined in section 90.801(1)(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The parties agree that the statement Officer Gaston attributed to Hector Ruiz was hearsay. It was offered to prove the truth of Ruiz's assertion that the defendant had the firearm in his possession. It follows that the statement was not admissible in evidence unless it falls within one of the statutory exceptions to the hearsay rule.
The state argues that the statement was admissible under the excited utterance exception in section 90.803(2), which authorizes the admission of "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," notwithstanding the general prohibition against hearsay. The rationale for this exception is that a statement made during a period of excitement is likely to be more reliable than a statement made after a period of reflection. See Evans v. State, 838 So.2d 1090 (Fla.2002). A person who is startled and excited does not have the capacity to analyze the facts or to make a conscious misrepresentation of the event. A statement made during a period of excitement is therefore less likely to be contrived.
Florida courts have drawn three elements from the text of section 90.803(2). According to the case law, the excited utterance exception applies when (1) there is an event startling enough to cause nervous *697 excitement; (2) the statement was made before there was time for reflection; and (3) the statement was made while the person was under the stress of the excitement from the startling event. See Stoll v. State, 762 So.2d 870, 873 (Fla.2000); Rogers v. State, 660 So.2d 237, 240 (Fla.1995); State v. Jano, 524 So.2d 660, 661 (Fla.1988). The courts have declined to set a fixed amount of time that is sufficient for reflection, but have reasoned instead that the requisite time is a subjective matter that depends on the circumstances. See Rogers, 660 So.2d at 240; Werley v. State, 814 So.2d 1159, 1161 (Fla. 1st DCA 2002).
With these guiding principles, the trial judge could properly conclude that the statement at issue was an excited utterance. The abduction at gunpoint was undoubtedly a startling event. Whether the declarant had enough time for reflection is a matter that might be subject to debate, but we have no reason to question the trial court's judgment on this point. The statement was made only six to eight minutes after the crime had been reported and it is reasonable to assume that the declarant had not regained his composure in that time. Finally, there is evidence to support the trial court's conclusion that the statement was made while the declarant was under the stress of the excitement of the event. Officer Gaston said that Ruiz appeared to be nervous or shaken up and that he was speaking rapidly.
The statement in this case qualifies as an excited utterance, for the reasons we have given, but that does not necessarily mean that it was properly admitted in evidence. An out-of-court statement is not admissible merely because it meets the definition of an excited utterance. In fact, the drafters of the Florida Evidence Code were careful not to leave this impression. The introductory language of section 90.803 states that an excited utterance is "not inadmissible" under the rule forbidding the use of hearsay. The language used here is precise. That a statement meets the definition of an excited utterance does not guarantee its admission in evidence at a trial or hearing, but only that it will not be excluded on the ground that it is hearsay. The statement might be inadmissible for other reasons.

B
When the prosecution seeks to introduce a hearsay statement against the defendant in a criminal case, the court must also determine whether the use of the statement would violate the defendant's constitutional rights. The Sixth Amendment states in material part, that "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The right guaranteed by this part of the Sixth Amendment differs from the kind of protection that is afforded by state evidence rules governing the admission of hearsay.
The standard for determining whether the admission of a hearsay statement against a criminal defendant violates the right of confrontation was recently modified in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Before the Crawford decision, the issue was controlled by the holding in Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that a hearsay statement could be admitted in a criminal trial without violating the right of confrontation if (1) it was shown that the declarant was unavailable, and (2) the out-of-court statement bore adequate indicia of reliability. This test focused on the reliability of the statement. As the Court explained, a statement had adequate indicia of reliability if it either fell within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." Id.
*698 In Crawford, the Supreme Court dispensed with the reliability analysis in Roberts and held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial, and (2) the declarant was unavailable and the defendant lacked a prior opportunity for cross-examination. The Court emphasized that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at ___, 124 S.Ct. at 1374.

1.
Our initial task then is to determine whether the statement Ruiz made to Gaston was testimonial. In a passage of the Crawford opinion that is often quoted, the Court identified three kinds of statements that could be properly regarded as testimonial statements: (1) "`ex parte in-court testimony or its functional equivalent  that is, material such as affidavits, custodial examinations, prior testimony ... or other pretrial statements that declarants would reasonably expect to be used prosecutorially'"; (2) "`extrajudicial statements contained in formalized testimonial material such as affidavits, depositions, prior testimony, or confessions'"; and (3) "`statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Crawford, 541 U.S. at ___, 124 S.Ct. at 1364. See People v. Caudillo, 122 Cal.App.4th 1417, 19 Cal.Rptr.3d 574 (2004); State v. Wright, 686 N.W.2d 295 (Minn.Ct.App.2004). The Court did not offer a formal definition of the term "testimonial" but elected instead to give meaning to the term by these three examples, each of which the Court said was an acceptable "formulation" of the concept. See Crawford, 541 U.S. at ___, 124 S.Ct. at 1364.
The statement at issue here does not fit neatly within the first category of testimonial statements identified in Crawford. Although the statement was made in response to a question by a police officer, it is doubtful that the questioning could be regarded as an "interrogation." Many of the post-Crawford decisions have held that initial police questioning at the scene of a crime is not an interrogation, see, e.g., People v. Corella, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770 (2004); Fowler v. State, 809 N.E.2d 960 (Ind.Ct.App.2004); Hammon v. State, 809 N.E.2d 945 (Ind.Ct.App.2004); see also Cassidy v. State, 2004 WL 1114483 (Tex.App.2004), and there is support for this conclusion in the Crawford opinion. The Court used the term "interrogation" in this context to refer to a structured inquiry, and the questioning in this case does not meet this standard.
Nor does the statement in this case fall within the second category for out-of-court statements made in "formalized testimonial materials." The statement Ruiz made to Gaston was an extrajudicial statement, but it was not made with the kind of formality the Court was referring to in Crawford. It was not the kind of solemn or deliberate statement a person would make in an affidavit or a deposition.
Whether the statement was made with the reasonable expectation that it would be used in court is a more difficult question. For this third category of testimonial statements, the Court offered a functional test that could be applied to a variety of statements. An extrajudicial statement made in an informal setting might qualify as a testimonial statement if it was meant to be used against someone in court. With this formulation, the Court focused on the purpose of the statement and its intended *699 effect, and not the procedural context in which the statement was made.
A statement is more likely to have been made with the expectation that it would be used as evidence if it was given in response to questioning by a government official than it would if it had been volunteered. Emergency 911 calls offer a good illustration of this point. Many courts have concluded that a hearsay statement made in a 911 call is not testimonial, because the statement is not made in response to police questioning, and because the purpose of the call is to obtain assistance, not to make a record against someone. See Caudillo, 19 Cal.Rptr.3d at 587-590; Wright, 686 N.W.2d at 302; Corella, 18 Cal.Rptr.3d at 776; but see People v. Cortes, 4 Misc.3d 575, 781 N.Y.S.2d 401 (N.Y.Sup.Ct.2004).
A closer question is presented if the statement was made in response to police questioning at the scene of a crime. See Wright, 686 N.W.2d at 305 (avoiding this issue with a finding that the admission of the statement was harmless). It is not difficult to imagine a situation in which a declarant would make a statement to a police officer at the scene of a crime for the purpose of incriminating someone else. We do not know if that was Hector Ruiz' intent here, but we do know that he made the statement in direct response to a question by a police officer and that he did accuse the defendant of a crime.
Ruiz was excited at the time he made the statement, and that also has a bearing on his expectation regarding the potential use of his statement in court. Some of the post-Crawford decisions have questioned whether a statement admitted in evidence under the excited utterance exception to the hearsay rule could ever be characterized as a testimonial statement. See Fowler, 809 N.E.2d at 964; Hammon, 809 N.E.2d at 952. While this argument has some appeal at least on the surface, we do not think that excited utterances can be automatically excluded from the class of testimonial statements.
In our view, the findings necessary to support a conclusion that a statement was an excited utterance do not conflict with those that are necessary to support a conclusion that it was testimonial. A statement made in the excitement of a startling event is likely to be more reliable given the fact that the declarant had little time to make up a story. But, under Crawford, reliability has no bearing on the question of whether a statement was testimonial. Some testimonial statements are reliable and others are not.
Whether a statement falls within the third category of testimonial statements identified in Crawford depends on the purpose for which the statement is made, not on the emotional state of the declarant. A spontaneous exclamation to a friend or family member is not likely to be regarded as testimonial. See, e.g., People v. Vigil, ___ P.3d ___, 2004 WL 1352647 (Colo.Ct.App.2004) (holding that an excited utterance a child made to his father immediately after a sexual assault was not testimonial); Demons v. State, 277 Ga. 724, 595 S.E.2d 76 (2004) (holding that an excited utterance made to a friend was not testimonial); State v. Manuel, 685 N.W.2d 525 (Wis.Ct.App.2004) (holding that a statement the declarant made to his girlfriend was not testimonial). These statements were not made to a person in authority for the purpose of accusing someone, or in the words of the Supreme Court, to "bear testimony" against someone. In contrast, a startled person who identifies a suspect in a statement made to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect. In this situation, the statement does not lose its character *700 as a testimonial statement merely because the declarant was excited at the time it was made.
These principles lead us to conclude that the statement at issue was a testimonial statement. While it is true that Ruiz was nervous and speaking rapidly, he surely must have expected that the statement he made to Officer Gaston might be used in court against the defendant. He knew that Gaston was a policeman who was on the scene in an official capacity to investigate a reported crime. Even in his excitement, Ruiz knew that he was making a formal report of the incident and that his report would be used against the defendant.

2.
This leaves us to determine whether the declarant was unavailable and, if so, whether the defendant had a prior opportunity for cross-examination. The parties were not able to serve Hector Ruiz with a subpoena for trial, but the defendant's counsel did have an opportunity to question him in a discovery deposition before he absconded. The question we must decide, then, is whether a discovery deposition qualifies as "prior opportunity for cross-examination," as that phrase is used in Crawford.
A criminal defendant who elects to participate in discovery has a right to take depositions of certain witnesses listed by the state. See Fla.R.Crim.P. 3.220(h). This rule enables the defendant to prepare for trial and to make an informed decision in plea negotiations. A lawyer taking a discovery deposition of a witness for the state could cross-examine the witness, but that is not what is contemplated by the rule. Rule 3.220(h) was designed to provide an opportunity for discovery, not an opportunity to engage in an adversarial testing of the evidence against the defendant. Nor is the rule customarily used for the purpose of cross-examination. Most good criminal defense lawyers attempt merely to learn what the testimony will be and, at the most, to limit the testimony.
This point was brought to life in the supreme court's decision in State v. Basiliere, 353 So.2d 820 (Fla.1977). The victim in that case had died before the trial, and the state was attempting to introduce his deposition in evidence. Although the defendant's lawyer declined to cross-examine the witness during the deposition, the court held that this was not a waiver of the defendant's right to confront the witnesses against him. As the court explained, the defendant had "no idea" that the deposition would be his only chance to confront the witness:
"[W]hen the defendant sought discovery through means of deposition, it was only to ascertain facts upon which the charge was based. Being unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements, defendant could not have been expected to conduct an adequate cross-examination...."
Id. at 824-25. The court drew a distinction between a discovery deposition and a deposition to perpetuate testimony under rule 3.190(j). A deposition to perpetuate testimony is taken with the expectation that it will be used at trial in lieu of live testimony. The court reasoned in Basiliere that, while a deposition to perpetuate the victim's testimony would have satisfied the defendant's right of cross-examination, a discovery deposition does not.
The court addressed the point again in a different context in State v. Green, 667 So.2d 756 (Fla.1995). In that case, a child who had been the victim of sexual abuse recanted the testimony she gave in a discovery deposition. She testified at trial that another man committed the offense. *701 Because the victim testified at trial, her deposition was presented as substantive evidence under section 90.801(2)(a) of the Florida Evidence Code. On review, the supreme court held that, although this section of the Evidence Code allows the admission of deposition testimony that is inconsistent with the testimony given by the witness at trial, the term "deposition" as used in the Code does not include discovery depositions. Again, the court recognized that a discovery deposition is not intended as an opportunity to perpetuate testimony for use at trial.
By the logic of Basiliere and Green, a discovery deposition cannot be regarded as a prior opportunity for cross-examination. The decision in Basiliere would preclude the admission of the Ruiz' deposition in circumstances very similar to those presented here. If the deposition is not admissible because it does not afford the defendant the right of cross-examination, we could hardly say that it serves to cure the confrontation problem presented by the use of a statement made to a third party, in this case, a police officer.
Another compelling reason to conclude that a discovery deposition is not a prior opportunity for cross-examination is that the defendant is not entitled to be present. Rule 3.220(h)(7) states that "a defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule." Subdivision (h)(7) goes on to say that the court may order the physical presence of the defendant on a showing of good cause. It would be contrary to the most basic requirement of the Sixth Amendment to conclude that a defendant has a right to cross-examine a witness in a proceeding he is not even entitled to attend. As Professor John Yetter put it, "if a discovery deposition is to have any chance of substitution for at-trial confrontation, the prosecution will at least have to offer to stipulate to the attendance of the defendant, who, in turn, will have to be given the opportunity to attend." John F. Yetter, Wrestling with Crawford v. Washington and the New Constitutional Law of Confrontation, Fla. B.J., Oct. 2004, at 26, 30.
Only in the broadest possible sense could it be said that a discovery deposition offers an "opportunity" for cross-examination. We think that it plainly does not offer the kind of opportunity the Court was referring to in Crawford. If we were to conclude that the taking of a discovery deposition satisfies the right of confrontation, we would also have to conclude that the right is satisfied even if the defendant neglects or declines to depose the witness. And it would be a very short step from there to extend the rule to defendants who have not even elected to participate in discovery. After all, the defendant has an opportunity to participate in discovery and an opportunity to depose witnesses listed by the state. We could even say that the Florida discovery rule effectively eliminates the constitutional requirement announced in Crawford, so long as the state can show that the declarant was available for deposition at some time before the trial. As these possibilities illustrate, the taking of a discovery deposition cannot be treated as a proceeding that affords an opportunity for cross-examination.
We acknowledge that the Fifth District Court of Appeal expressed a contrary view in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004). There, the court held that the admission of a hearsay statement by a child victim of sexual abuse did not violate the defendant's right of confrontation under the test announced in Crawford, because the defendant had previously taken the victim's deposition and thus had an opportunity to cross-examine her. For the reasons we have given in support of our *702 decision here, we respectfully disagree with the analysis in Blanton and we certify that our decision on this point directly conflicts with the decision of the Fifth District Court of Appeal in that case.

III
In summary, we conclude that the statement qualifies as an excited utterance, but that the use of the statement violated the defendant's Sixth Amendment right to confront the witnesses against him. The statement at issue was testimonial, the declarant was not available, and the defendant did not have a prior opportunity for cross-examination. Because the trial court erred in admitting the statement in evidence and the state has not shown that the error was harmless, the defendant is entitled to a new trial.
Reversed.
BENTON and HAWKES, JJ., concur.