910 So.2d 901 (2005)
Rodolfo CONTRERAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-1683.
District Court of Appeal of Florida, Fourth District.
September 14, 2005.
*902 Valentin Rodriguez Jr., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
In this appeal by a defendant who was convicted of sexual battery and lewd and lascivious molestation of his daughter, we have occasion to consider the proper use of out-of-court ex parte statements. Defendant argues that the State's principal evidence of the crimea video statement of the victimfailed to satisfy the requirements of the Confrontation Clause of the United States Constitution as recently explicated in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We agree and reverse.
In February 1999, the coordinator of a Child Protection Team (CPT) working with the Sheriff of Palm Beach County took a statement of the victim regarding allegations of sexual molestation. The statement was conducted at Homesafe, a local shelter for victims of domestic violence and other crimes. The statement was videotaped. A police detective was in another room but connected electronically *903 to the coordinator to suggest questions. In substance, the child stated that the defendant had committed acts of sexual activity with her on one particular night. A few weeks later, in March 1999, defendant was charged with capital sexual battery on his daughter, who was born June 29, 1989. The Information charged that the incident occurred between August 1st and September 1st, 1998.
In August 1999, some six months after the ex parte statement, the defense counsel then assigned to the case took a discovery deposition of the victim. Defendant was not personally present for this deposition (deposition I). The complete deposition was 21 pages in length. In substance, deposition I was little different from the ex parte statement.
In May 2000, nearly 10 months after deposition I, new defense counsel sought permission to take another discovery deposition of the victim, saying that prior defense counsel had destroyed his discovery notes. The trial judge allowed the second discovery deposition, but only with limitations and with the judge watching it from another room by closed circuit television to rule on any objections arising during the questioning (deposition II). In substance, deposition II elicited the following new testimony from the victim.
She expected that she would have to be questioned again before trial and at trial. She did not expect to be nervous at trial because defense counsel would probably be asking her the same questions. Before deposition II she asked to see the videotape of her statement because she "didn't have such a good memory" of the incident, and was having problems remembering what happened. She had tried to tell the CPT interviewer what she wanted to hear. She watched the videotape before the deposition because, if she could not remember, then she could just say the same thing she had said before. She does not remember Dr. Banta or speaking to her about the incident. She learned the meaning of the word "vagina" after the incident, so she did not know the difference then between "vagina" and "pee pee". But she knows the difference now. She does not know what "penetration" means. Her father did not stick "himself inside of her". She has a better idea of how to describe the incident now because she knows her anatomy better. She knows it is not her fault and that it happens to a lot of young girls. She has related the incident to different people (law enforcement, therapists, attorneys). She does remember talking to someonemaybe it was Dr. Bantaand did not want to tell the truth because her mom was present.
The case was not ready for trial until July 2002. By then, the victim was 13. Shortly before trial, the State moved to present the victim's trial testimony by videotape, or from outside the courtroom by closed-circuit live television. A few days later, the State amended its request and asked to have the child declared unavailable for trial entirely and to use the ex parte video statement instead. The State arranged for the child to be evaluated by a psychologist, who opined that she would suffer severe "emotional and psychological harm" if she testified in person. The trial judge found her unavailable because of the expert's opinion and allowed the use of the ex parte statement.
At trial, the State's case consisted of the child's ex parte statement and the father's confession to "molestation" and perhaps union but not penetration. The mother testified to seeing them in differing stages of undress afterward. The CPT coordinator corroborated the substance of the *904 statement. A doctor found no physical evidence of molestation.
At the close of the State's case, defendant moved for a judgment of acquittal, arguing:
"the State has not proved a prima facie case ... [that Defendant] committed an act in which the sexual organ of the defendant penetrated or had union with the vagina of the victim. The evidence used to deduce this element of the crime alleged was a video ... that we were not able to cross examine based upon the ruling that the child was unavailable.... His Sixth Amendment right to confrontation has been fundamentally affected such that the evidence certainly cannot be considered as prima facie evidence."
The trial judge denied the motion, explaining:
"Obviously, when the circumstances permit some form of confrontational cross examination, the child has the videotape or one-way mirror set up. That is the more preferable option; certainly preferable to having a jury hear a statement by a child which is not and has not been subject to cross examination. But in this situation, I think that we have a great deal of evidence which totally corroborates what the child said.... I find that the child's testimony is extremely credible.... And without for a moment discounting the importance of the Sixth Amendment right to confrontation, I find that the State has done a commendable job in eliciting testimony and evidence which confirmed the accuracies of everything the child said. And for that reason, I find that the child's videotape statement is highly credibleindeed totally credible. And that cross examination of the child, had it been possible without traumatizing her, would not have yielded any concessions by her that would have lessened or significantly altered her statement."
When defense counsel renewed the motion at the close of all the evidence, the trial judge said:
"I would like to ask counsel about your recollection as to the subsequent videotape or recorded statement of the victim thatthat Defense, I think for good reason, chose not to bring in because I don't think it would have been helpful to the Defense to do so.... So at the time, Ms. Lynch had the opportunity to cross-examine.... [A]t that time of the second statement, the videotape of the victim, the Public Defender's office ... certainly had the opportunity to cross-examine and the bottom line there simply was that the victim, herself, was consistent and credible to the point where I think the defense wisely realized that it would be no good to the defendant to bring that second statement in because it would do primarily harm to the defendant by reiterating what she said in the earlier statement. And I do want to make it a note on the record that the defendant was not denied the right of cross-examination of that victim, but having had the opportunity... simply faced with a credible recitation that pretty much reiterated the earlier one. And, accordingly, there has been no denial of the right of confrontation, but simply a choice by Defense counsel as to the inadvisability of utilizing that second video at trial.... I want to note that the State's case ... contains a tremendous amount of credible and consistent evidence, each of the State witnesses corroborating each of the other...."
The father was convicted and appeals.
The State argues that there is no violation of the Sixth Amendment's Confrontation Clause from using an ex parte *905 pre-trial statement as the primary evidence of guilt because defense counsel was given an opportunity to cross-examine the child during a later deposition not admitted at trial. We are required to decide whether the statement of the victim to the CPT, presented at trial by the State to establish the elements of sexual battery, is "testimonial" within Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We begin by noting that a statute has established the CPT as part of the Department of Children and Families for the express purpose of "process[ing] child abuse cases." [e.s.] § 39.01(13), Fla. Stat. (2004). The statute explicitly states that a purpose of child protection teams is to provide "expert medical, psychological, and related professional testimony in court cases." [e.s.] § 39.303(1)(e), Fla. Stat. (2004). The statute also specifies that the CPT shall provide "forensic interviews." § 39.303(1)(j), Fla. Stat. (2004). Under these statutes, interviews of child victims of sexual abuse by the protection team are routine. A principal purpose of those interviews is for testimonial use at trial.
Frankly we do not think there is room for doubt about whether such CPT "interviews" qualify as testimonial under Crawford. Although Crawford did not attempt a complete listing of the testimonial statements barred by the Confrontation Clause, the Court did specify some that are clearly within its "core" meaning. The Court named:
"pretrial statements that declarants would reasonably expect to be used prosecutorially, ... extrajudicial statements... contained in formalized testimonial materials ... statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial ...." [c.o.]
541 U.S. at 51-52, 124 S.Ct. 1354. The Court added that the term testimonial applies "at a minimum to ... [among others] police interrogations. ..." [e.s.] 541 U.S. at 68, 124 S.Ct. 1354. The CPT interview of the victim, admitted as an ex parte statement, constitutes a police interrogation.
This kind of interview by a CPT is indistinguishable from an ordinary police interrogation. In fact, according to the statute the CPT is by contract part of the local police investigation and prosecution of child sexual abuse cases. See § 39.306, Fla. Stat. (2004) ("The department shall enter into agreements with the jurisdictionally responsible county sheriffs' offices and local police departments that will assume the lead in conducting any potential criminal investigations arising from allegations of child abuse, abandonment, or neglect. The written agreement must specify how the requirements of this chapter will be met."). If the team is part of the police investigation, the interview is in fact police interrogation.
In a recent article, Professor Yetter has discussed the criteria for ascertaining which statements are testimonial for purposes of the Confrontation Clause. See John F. Yetter, Wrestling With Crawford v. Washington and the New Constitutional Law of Confrontation, 78 FLA. BAR J. 26, 28 (Oct.2004). He noted that the Court itself had extended the term testimonial beyond mere formal testimony. Id. The Court included police interrogation as testimonial because of its essential objective characteristic: "the generation of statements that might be used later against a defendant at trial." Id. Using that analytical tool to discern other out-of-court statements that should be barred by the Confrontation Clause, Professor Yetter reasoned:

*906 "the scenario that comes immediately to mind as very possibly producing testimonial statements is the interviewing of complainants of sexual abuse by members of child protection units and similar personnel. These events are motivated in large part by the search for evidence and they are the type of repetitive procedural events that are defined by their context and not by the evanescent expectations of the participants. Furthermore, the personnel of these units have been treated as members of the extended prosecutorial team." [f.o.]
78 FLA. BAR J. at 28-29. The scenario he cites is the very one we confront today.
In cases since Crawford, other states with functional equivalents of Florida's child protective teams have held that similar statements are testimonial. See State v. Courtney, 682 N.W.2d 185 (Minn.App. 2004) (video tape of statement given by child victim of sexual abuse to child protection worker, during which police officer observed questioning by satellite and interrupted interview to advise child protection worker as to specific questions to propound, deemed testimonial within holding in Crawford); People v. Sisavath, 118 Cal. App.4th 1396, 13 Cal.Rptr.3d 753 (2004) (holding as testimonial under Crawford interview of child victim of sexual abuse taken and videotaped at county facility designed and staffed for interviewing children suspected of being victims of sexual abuse); Snowden v. State, 156 Md.App. 139, 846 A.2d 36, 47 (2004) (testimony of licensed social worker employed by County Child Protective Services as to statements made by child sexual abuse victim held testimonial under Crawford); People v. Vigil, 104 P.3d 258 (Colo.App.2004), cert. granted, No. 04SC532, 2004 WL 2926003 (Colo. Dec.20, 2004) (videotaped interview of child victim of sexual abuse by police officer trained in interviewing child victims held testimonial under Crawford).
In Sisavath, as here, the government contended that the interview was conducted for therapeutic purposes and therefore could not be deemed testimonial. As Justice Wiseman of the California Court of Appeals noted, however:
"Under these circumstances, it does not matter what the government's actual intent was in setting up the interview, where the interview took place, or who employed the interviewer. It was eminently reasonable to expect that the interview would be available for use at trial. Nor does it matter that the interview was not part of one of the proceedings the Supreme Court mentioned by name. The Court made it clear that it was not giving an exhaustive list."
118 Cal.App.4th at 1403, 13 Cal.Rptr.3d 753. We apply the same analysis to this case and conclude that the trial judge's decision to the contrary is simply a misapplication of the law to the facts.
The State argues that the use of the CPT statement in this case satisfies Crawford because it complies with State v. Townsend, 635 So.2d 949 (Fla.1994), which held that compliance with section 90.803(23), as modified in Townsend, satisfied the Confrontation Clause. Townsend reasoned that "when a declarant is unavailable and the hearsay does not fall within a firmly rooted hearsay exception, the hearsay must be marked with particularized guarantees of trustworthiness in order to be admissible." 635 So.2d at 956. The problem with relying on Townsendand, for that matter, its antecedent in Perez v. State, 536 So.2d 206 (Fla.1988), cert. denied, 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989)is that both are squarely founded on Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). And the problem with Roberts is that its rationale was explicitly overruled *907 in Crawford. In the wake of Crawford there isn't much left of Roberts. Both Townsend and Perez were founded on the rationale of Roberts, which was explicitly disapproved by Crawford.
If that is the foundation for holding section 90.803(23) in compliance with the Confrontation Clause, it is very difficult to see how this hearsay exception is viable any longer. Crawford states:
"This [Roberts] test . . . is too broad: It applies the same mode of analysis whether or not the hearsay consists of ex parte testimony. This often results in close constitutional scrutiny in cases that are far removed from the core concerns of the Clause. At the same time, however, the test is too narrow: It admits statements that do consist of ex parte testimony upon a mere finding of reliability. This malleable standard often fails to protect against paradigmatic confrontation violations."
541 U.S. at 60, 124 S.Ct. 1354. The Court responded to suggestions that it abandon the Roberts rationale and decided that it should replace Roberts with a categorical rule: "Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68, 124 S.Ct. 1354.
We do not believe the trial court's finding that the child was unavailable to testify satisfies the Confrontation Clause requirement of physical unavailability. Generalized "harm" from testifying does not make a witness unavailable within the meaning of the Sixth Amendment. The act of testifying in a public courtroom is indeed for most people a trauma, and for none more surely than young children. But the essential attribute of our accusatory system established by the Confrontation Clause is the right of the defendant to confront the testimony of live witnesses in court. If witnesses are unavailable for Confrontation Clause purposes merely because of subjective mental anguish and emotional scarring from testimony, this protection would cease to have the certainty and categorical effect that Crawford holds it was designed to have.
In addition to Crawford, defendant also argues that the child victim was not legally unavailable to testify within the meaning of section 90.803(23). He points out that in finding her unavailable the trial court erroneously relied on the opinion of a child psychologist as to some general, unspecified harm that might result if she testified. He argues that the court did not explore something less than total unavailability such as having the child testify by closed circuit television, rather than live in the courtroom.
We agree that the record does not support the trial court's finding of unavailability. The child victim's testimony at the discovery deposition demonstrates beyond any doubt that the child recognized she would have to testify at trial, that she was prepared for it, that none of this was her fault, and that she understood the events well enough to state her evidence clearly. Nothing in the psychologist's opinion testimony indicates that he considered the child's own testimony as to her ability to testify at trial. She was also 13 at the time of trial, and thus she no longer qualified for unavailability under section 90.803(23).
Under section 90.803(23)(a)(2)(b), a trial judge may find that a child is unavailable as a witness because the "child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm." This subjective method of determining unavailability does not survive Crawford. These are the types of "vague standards" that Crawford *908 criticizes as "manipulable." 541 U.S. at 68, 124 S.Ct. 1354. The Sixth Amendment is a "categorical constitutional guarantee[ ]" requiring more stringent standards for determining when a witness is unavailable so that out of court testimony may be utilized. We certify that our decision todaycompelled, as it is, by Crawford and the Supremacy Clauseconflicts with Townsend and Perez.
We also do not think Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), saves this case either. The contention is that under Blanton the defendant's discovery deposition is a satisfactory substitute for the right of confrontation at trial. We might agree with that proposition if the deposition had been admitted into evidence along with the statement by the CPT. But there was no attempt by the State to do so. It had a choice between adducing evidence that had faced the cross-examination required by the Confrontation Clause or instead, standing on an ex parte statement to a CPT. It is the State who has the burden of proof, not the defendant. It is the State who failed to introduce this confrontation evidence.[1] Not only does a defendant have no burden to produce constitutionally necessary evidence of guilt, but he has the right to stand silent during the state's case in chief, all the while insisting that the state's proof satisfy constitutional requirements. We certify conflict with Blanton.
Professor Yetter points out that the discovery rule prohibits the presence of the defendant at discovery depositions without a court order or a stipulation between the state attorney and the defense counsel. Fla. R.Crim. P. 3.220(h)(7) (2004) ("A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule. The court may order the physical presence of the defendant on a showing of good cause.").[2]
Crawford said: "the principal evil at which the [Confrontation] Clause was directed was the civil-law mode of criminal procedure, [and] particularly the use of ex parte examinations as evidence against the accused." 541 U.S. at 50, 124 S.Ct. 1354. Or, as the Court later said: "ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them." 541 U.S. at 51, 124 S.Ct. 1354. Or, again: "[that would] admit[ ] statements that do consist of ex parte testimony upon a mere finding of reliability." 541 U.S. at 60, 124 S.Ct. 1354.
The cases hold that the admission of discovery depositions against a defendant who was not personally present during the deposition violates the Confrontation Clause. State v. Clark, 614 So.2d 453 (Fla. 1992); State v. Basiliere, 353 So.2d 820 (Fla.1977). Moreover prior decisions curtail *909 the use of discovery depositions to impeachment only. State v. Green, 667 So.2d 756 (Fla.1995); Rodriguez v. State, 609 So.2d 493 (Fla.1992). As Professor Yetter concludes:
"it seems clear that if the defendant's confrontation of the witness at a discovery deposition is to substitute for cross-examination at trial, then the deposition testimony will have to be admissible as substantive proof to the same extent as it would be if solicited on cross-examination at trial. Because the Florida decisions categorically prohibit this result, the only option for the state would seem to be to anticipate and try to avoid the impediment by waiving on the record, and in advance of the deposition, any objection to the defendant's substantive use of the discovery deposition."
78 FLA. BAR J. at 30-31.
There was no indication that Contreras was present at either of the depositions. If a statement is "testimonial" under Crawford, a "prior opportunity for cross examination" under the Sixth Amendment requires face-to-face confrontation of a defendant and a witness against him. The Supreme Court's review of the history prior to the adoption of the Sixth Amendment emphasizes the importance of a defendant's presence when a witness gives testimony. 541 U.S. at 42-50, 124 S.Ct. 1354. For example, the Supreme Court described State v. Webb, 2 N.C. 103 (1794) as "shed[ding] light upon the original understanding of the common-law right." Crawford, 541 U.S. at 49, 124 S.Ct. 1354. "[D]ecided a mere three years after the adoption of the Sixth Amendment, [Webb] held that depositions could be read against an accused only if they were taken in his presence. Rejecting a broader reading of the English authorities, the court held: `[I]t is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine'." Id. Because there is nothing in this record satisfying these constraints it is not possible for an appellate court to rely on any opportunity of cross-examination at a later deposition to save the state's reliance on the child protection team statement.
We do not go as far as Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004) and hold that a criminal discovery deposition could never satisfy Crawford's "prior cross examination" requirement. The Florida Supreme Court has held that a criminal discovery deposition is inadmissible at a criminal trial even where the deponent dies after the deposition because it does not satisfy the Sixth Amendment. State v. Basiliere, 353 So.2d 820 (Fla.1977). The court reasoned that because the defendant was "unaware that [the] deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements," the defense attorney "could not have been expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition." 353 So.2d at 824-25. We can envision circumstances where defendant is aware of the State's intention to use a prior testimonial statement, is present at a deposition, and so conducts the cross examination of the witness that it might satisfy Crawford.
We add that we are unable to find the Crawford violation harmless error. The standard for ascertaining whether an error is harmless is contained in the following:
"the harmless error analysis focuses on the effect of the error on the trier of fact. Thus, the reviewing court must resist the temptation to make its own determination of whether a guilty verdict could be sustained by excluding the impermissible evidence and examining *910 only the permissible evidence. . . . `Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result'." [c.o.]
Goodwin v. State, 751 So.2d 537, 542 (Fla. 1999). The State's harmless error argument does little more than point to strong evidence of guilt, when the real test is whether the error could have conduced to a guilty verdict. It is not clear from defendant's confession that it would have been admissible in the absence of the ex parte statement. As the Vigil court said under very similar circumstances while applying a Goodwin harmless error analysis, "although there was unquestionably other corroborating evidence presented, we cannot say that the erroneous admission of the single most persuasive evidence of defendant's guilt was harmless beyond a reasonable doubt." 104 P.3d at 264-65.
Reversed.
GROSS, J., concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
I respectfully dissent. I am neither convinced of the testimonial nature of the particular statement in question nor believe its introduction into evidence is violative of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The social worker member of the child protection team[3] conducted a videotaped interview with the child nearly six months after the incident. The child was not sworn. No law enforcement officer was in the room during the interview, but a detective listened from another room. The child told the interviewer that her father had touched her, kissed her all over, and touched her with his private part.
The same detective later interviewed the defendant at his workplace. Subsequent to these statements, defense counsel conducted two videotaped depositions of the child victim.
In the first deposition, the child indicated she could not recall any other episodes of molestation before the charged incident. She had watched the videotaped interview with the social worker prior to the deposition. While she reiterated her prior testimony, she did not testify that any penetration occurred during the molestation.
Defense counsel subsequently requested court permission to take a second deposition of the child victim. The court permitted the second deposition limited to two areas of inquiry: (1) the victim's memory; and (2) the issue of penetration. Prior to the second deposition, the child once again reviewed the videotaped interview with the social worker. She explained that she didn't have such a good memory of the incident.
The child admitted having told the social worker what she thought the interviewer wanted to hear. She did not understand the precise meaning of words used during her initial interview, but had now come to understand them. With this new understanding, *911 she was able to articulate precisely the nature of the defendant's conduct as it related to her. She was certain that no penetration occurred.
The record reflects that on May 15, 2000, the defendant filed a "Notice of Intent to Offer Hearsay" in the form of the victim's deposition "taken under supervision of the Court on May 12, 2000." This deposition, which the trial judge observed through closed circuit television, was introduced by the defense and admitted at a hearing on August 8, 2002.
Prior to trial, the State moved for permission to admit the child's videotaped statement to the social worker or have the child testify by closed-circuit television. The defense objected. After having the child psychologically evaluated, the court found the child was unavailable and her unsworn statement to the social worker met the reliability requirements of section 90.803(23), Florida Statutes (2001).
At trial, the State introduced the original videotaped interview of the child. When the defense raised the lack of opportunity to cross examine the child during the interview, the court commented:
And without, for a moment discontinuing [sic] the importance of the Sixth Amendment right to confrontation, I find that the State has done a commendable job in eliciting testimony and evidence which confirmed the accuracies of everything the child said. And for that reason, I find that the child's videotape statement is highly credible; indeed totally credible. And that cross-examination of the child, had it been possible without traumatizing her, would not have yielded any concessions by her that would have lessened or significantly altered her statement.
Having previously determined the videotaped interview met the requirements of section 90.803(23), Florida Statutes (2001), the court admitted it.
In addition to the videotaped statement of the victim, the State provided testimony from a coworker of the defendant. He testified the defendant told him that he had molested his daughter after a bachelor party and needed help. The State also admitted the defendant's statement to law enforcement in which he admitted molesting, but not committing a sexual battery on his daughter.
The defense moved for a judgment of acquittal at the close of both the State's and defense case. In denying the motion for judgment of acquittal, the court made the following inquiry.
I would like to ask counsel about your recollection as to the subsequent videotape or recorded statement of the victim that, that Defense, I think for good reason, chose not to bring in because I don't think it would have been helpful to the Defense to do so. . . . So at the time, Ms. Lynch had the opportunity to cross-examine.. . . [A]t that time of the second statement, the videotape of the victim, the Public Defender's office, . . . certainly had the opportunity to cross-examine and the bottom line there is simply was that the victim, herself, was consistent and credible to the point where I think the defense wisely realized that it would be no good to the defendant to bring that second statement in because it would do primarily harm to the defendant by reiterating what she said in the earlier statement. And I do want to make it a note on the record that the, that the defendant was not denied the right of cross-examination of that victim, but having had the opportunity . . ., simply faced with a credible recitation that pretty much reiterated the earlier one and, accordingly, there has been no denial of the *912 right of confrontation, but simply a choice by Defense counsel as to the inadvisability of utilizing that second video at trial.... I want to note that the State's case . . . contains a tremendous amount of credible and consistent evidence, each of the State witnesses corroborating each of the other. . . .
(Emphasis added). The jury returned a guilty verdict on one count of sexual battery and one count of lewd and lascivious molestation.
After the defendant's initial brief was filed in this court, the United States Supreme Court issued its opinion in Crawford. There, the Court held the Confrontation Clause of the Sixth Amendment prohibits the admission of hearsay statements which are testimonial in nature unless the witness is unavailable[4] and the defendant has a prior opportunity for cross-examination. Id. at 59, 124 S.Ct. 1354. The Court declined to define "testimonial," and referred instead to Webster's dictionary.
Nevertheless, the Court identified a "core class of `testimonial' statements." Id. at 51, 124 S.Ct. 1354. They include "ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially. . . ." Id. (quoting Petitioner's Brief in Crawford).
In this case, the unsworn interview of the child victim was neither an affidavit nor a custodial examination. It is questionable whether this nine-year old victim reasonably expected her statement to be used prosecutorially. Yet, whether the unsworn videotaped interview of the child victim by a social worker falls within that core class of testimonial statements need not be decided because I would find the defendant had two opportunities to cross-examine the child victim thereby satisfying
Crawford and the Sixth Amendment. And, during those depositions, the defense obtained exculpatory evidence to refute the sexual battery charge, the only charge the defendant denied.
As the Fifth District Court of Appeal held in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), it is the prior "opportunity" to cross-examine that dictates the admissibility of a testimonial statement. In Blanton, the court found a defendant's ability to take the victim's deposition subsequent to the statement made to the police investigator provided the requisite "opportunity" to cross-examine, thereby satisfying Crawford and the Sixth Amendment. In fact, the Blanton court noted the "proximity in time [from the opportunity to cross examine] to the direct examination or statement date should have no bearing on how the fact finder assimilates the direct and cross once these statements are admitted into evidence." Blanton, 880 So.2d at 801 (footnote omitted); see also State v. Causey, 898 So.2d 1096 (Fla. 5th DCA 2005).
I am aware of the First District Court of Appeal's thorough analysis of the confrontation clause issue in Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004). There, the First District determined that an unsworn pre-trial interview similar to the one in this case was "testimonial" and that the defendant's opportunity to depose the victim did not satisfy the defendant's Sixth Amendment right of confrontation. With this latter conclusion, I would disagree. I also note that Lopez has been distinguished and disagreed with by courts across the country. See, e.g., Anderson v. *913 State, 111 P.3d 350 (Alaska App.2005) (victim's statement to officer at scene was "nontestimonial"); Spencer v. State, 162 S.W.3d 877 (Tex.App.2005) (domestic assault victim's statements to police concerning her attack were not testimonial in nature, and thus deputies' hearsay testimony relating the statements did not violate the confrontation clause under Crawford); Commonwealth v. Gray, 867 A.2d 560 (2005) (out-of-court statements made to police at the scene by the victim's daughter constituted excited utterances and did not fall "under the third classification of testimonial statements, namely, `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354)); People v. King, 02-CA0201, 2005 WL 170727, 121 P.3d 234 (Colo.Ct. App. Jan.27, 2005) (victim's statements to police were made spontaneously in reaction to her assault and resulting injuries; statements were excited utterances not made in a custodial setting, without an indicia of formality, and were "nontestimonial interrogation under Crawford"); State v. Davis, 364 S.C. 364, 613 S.E.2d 760 (2005) (defendant's associate's statement that witness should not buy the defendant's shotgun because it had been used to kill the victim was "nontestimonial").
Crawford constituted a sea change in the law of evidence. As noted by the dissent in Crawford, the lack of articulated parameters in the majority opinion unleashed a tempest of uncertainty in the application of its holding. Until time elapses and case law develops guidelines for establishing compliance with Crawford, courts will struggle to review each case to determine whether the statement is "testimonial" and whether the defendant has had the requisite opportunity for cross-examination.
Here, the defendant was twice given the "opportunity" to cross-examine the child victim at two videotaped depositions. Defense counsel's examination at those depositions elicited the child had a decreasing memory of what had occurred. The child in fact gave exculpatory testimony refuting the sexual battery claim. She explained her lack of knowledge of the terms used during the initial interview. She admitted giving answers she thought the interviewer wanted to hear, thereby casting doubt on the credibility of her statement to the social worker.
The defense indicated its intent to admit the victim's deposition by filing a Notice of Intent to Rely. However, for some reason, it chose not to introduce the depositions. It is significant to note this is not a case in which the defendant chose not to put on a defense. The defense called six witnesses on its behalf. In fact, during its case, the defense chose to introduce a statement made by the victim to her grandmother instead of the depositions during which it had two opportunities to cross-examine.
I would hold the trial court did not run afoul of Crawford or the Confrontation Clause of the Sixth Amendment by admitting the unsworn videotape statement of the child victim in this case.[5]
NOTES
[1] To hold defendant responsible for introducing the deposition is to suppose that the accused has some responsibility to clean up the state's evidence against him in a criminal trial. The presumption of innocence and the Due Process Clause's requirement of proof beyond a reasonable doubt combine to make the statenot the other party in the courtroomresponsible for adducing evidence that satisfies the Confrontation Clause.
[2] It might well be that a discovery deposition is just as traumatizing as testifying at trial. As Professor Yetter points out: "It is questionable. . . whether the finding of a substantial probability of severe mental or emotional harm to a child complainant would qualify as a circumstance permitting this type of deposition." 78 FLA. BAR J. at 30. Moreover, if the reason for deeming her unavailable for trial testimony was her tender years (she was 9 when the abuse occurred), we should understand that the trial was not held until 4 years later, when she was 13. It is the age of the witness at trial that matters. After Crawford, the trial court had no discretion to waive the requirements of the Confrontation Clause.
[3] Section 39.01(13), Florida Statutes (2001), defines the child protection team as "a team of professionals established by the Department of Health to receive referrals from the protective investigators and protective supervision staff of the department and to provide specialized and supportive services to the program in processing child abuse, abandonment, or neglect cases."
[4] The defendant does not dispute the unavailability of the child.
[5] I must admit the trial court's comment to counsel that the child's subsequent depositions completely corroborated her initial interview is questionable given the differences I perceive in those statements.