CIKLIN, J.,
dissenting in part and concurring in part.
I must respectfully dissent from that portion of the majority opinion finding that the victim’s statements did not constitute an excited utterance.
The crucial factor in finding that a statement constitutes an excited utterance is the “state of mind” of the declarant, which is “a preliminary fact to be determined by the trial court.” Elysee, 920 So.2d at 1207. In determining whether the necessary mental state exists, it is essential to consider the nature of the events leading up to the statement — as testified to not only by the victim — but also those who had the opportunity to personally observe the victim.
Here the victim was physically and violently abducted from her vehicle and then held captive at gunpoint, amid repeated physical abuse, for three and a half hours straight. During this unfathomable imprisonment, Bienaime continually hit the victim with the butt of an automatic handgun. As the infliction of terror continued, Bienaime told the victim that he was going to shoot her and the baby they thought, albeit mistakenly, she was carrying. At least one time during the ordeal, he put a pillow over her head and put the gun to the pillow. Bienaime frighteningly assured the victim that he was ready to die so nothing mattered. Then, unpredictably, Bienaime spontaneously let the victim go. Without knowing what Bienaime would do next, the victim fled to her neighbor’s house and called a cab to go to the police station. There is no evidence that she talked to her neighbor about the event or to anyone else. The five minute ride to the police station was then met with a recognizable need for emergency medical assistance, immediately after which she was first able to express what happened to her.
The stress of the parking lot abduction was met with prolonged captivity, cruel mental and physical abuse, and the threat of a bullet to the head, which in turn was met with the need for medical assistance, culminating in an excited and fearful (rather than reflective) state when given the first opportunity to talk to a law enforcement officer:
Q: When you first came into contact with her, can you describe to the members of the jury what her demeanor was like?
A: Very upset, shaken, scared, just wanted to tell what had happened to her that day.
*810 Q: And what, if any, observations did you make of her person?
A: I did see some injuries to her face area and just that she was very upset, and then I talked to her further to get information from her.
Q: And the whole time that you were speaking with her was she upset?
A: Yes. She wanted help.
[[Image here]]
Q: And were you able to determine if she was upset from the events that she was telling you?
A: That’s what I believe that she was upset about what had happened to her that day.
[[Image here]]
Q: And when you spoke with her, she was upset and she was scared; is that correct?
A: Absolutely, asking for help.
The victim’s conversation with the officer represented the first time she could express her emotions about the tumultuous events which had just occurred. The only time that accrued between her abrupt release by Bienaime and her statement to the police was her flight to the neighbor’s house, the phone call to the cab, the five minute drive to the police station and treatment by paramedics for about ten to fifteen minutes. See Lopez v. State, 888 So.2d 693, 697 (Fla. 1st DCA 2004) (“The courts have declined to set a fixed amount of time that is sufficient for reflection, but have reasoned instead that the requisite time is a subjective matter that depends on the circumstances.”); see also Edmond v. State, 559 So.2d 85, 86 (Fla. 3d DCA 1990) (upholding the admissibility of “an emotional description of the assailant” given by a “frightened” eleven-year-old boy two to three hours after the incident where “the child was excited, perhaps even hysterical, at the time his statements were made”).
While the victim may have given, as the majority characterizes it, a “narrative” answer to the officer’s questions, it did not indicate the reflective thought process necessary to preclude evidentiary admission. To compartmentalize the victim’s description of her ordeal as narrative and thus automatically render it inadmissible is not, I respectfully urge, the state of the law. The violent abduction, three and a half hours of brutal captivity and then silence about the horrifying event — until her statements to the officer — all support the trial court’s finding that the statements by the victim were made while she remained under the stress of it.
I do not believe the majority’s finding of reflective thought is consistent with the victim’s visibly emotional state, the series of petrifying events just visited upon her, and the overwhelming intensity of the victim’s nightmare itself such to conclude that the trial court abused its discretion. The trial court’s ruling comes to us clothed with a presumption of correctness. We should not disturb the presumption.